MEMORANDUM *
Original Sixteen to One Mine, Inc. (“the Operator”) petitions for review of a deci *826 sion of the Federal Mine Safety and Health Review Commission (“the Commission”) under the Federal Mine Safety and Health Act (“Mine Act”), 30 U.S.C. §§ 801, et seq., affirming the Administrative Law Judge’s order finding the Operator liable for four violations of mandatory safety standards and assessing a total of $19,650 in civil monetary penalties. Two of the citations, Citation Nos. 7995404 and 7995405, arose out of the November 6, 2000, death of miner Mark Fussell. With regard to these citations, the ALJ concluded that Fussell’s negligence was imputable to the Operator for penalty assessment purposes because he was an “agent” of the mine. The Operator then filed a Petition for Discretionary Review (“PDR”) with the Commission under 30 U.S.C. § 823, in which it requested an extension of time to prepare its complete response to the ALJ’s decision. Because the Commission failed to grant the request and then to grant review, the ALJ’s decision became a final decision of the Commission pursuant to 30 U.S.C. § 823(d)(1).
In its petition for review the Operator makes four claims: (1) Fussell is not an “agent” whose negligence with respect to Citations Nos. 7995404 and 7995405 is imputable to the Operator, (2) there is not substantial evidence to support Citation No. 7995405, which alleged that the locomotive was defective prior to Fussell’s accident, (3) the failure to train violation, Citation No. 7992100, did not constitute a “significant and substantial” violation under the Mine Act, and (4) the civil penalties were excessive.[1]
I.
We conclude that we have jurisdiction to review the Operator’s challenge to the ALJ’s finding that Fussell was an agent because it was raised in the PDR and was therefore “urged before the Commission” as required by 30 U.S.C. § 816(a)(1). See Duval Corp. v. Donovan, 650 F.2d 1051, 1055 (9th Cir.1981); Meredith v. Fed. Mine Safety and Health Review Comm’n, 177 F.3d 1042, 1050 n. 6 (D.C.Cir.1999).
II.
We note at the outset that this case presents two troubling procedural issues. First, the Commission denied the Operator’s request for an extension of time in which to supplement its PDR following its receipt of the Secretary’s opposition which contained the apparent misstatement of law that the Mine Act prevented the Commission from granting such an extension. Second, the ALJ’s decision relied heavily on statements made by Michael Miller, President and CEO of Original Sixteen to One, in his opening statement, despite the fact that the ALJ had advised Miller at the commencement of the hearing that his opening statement would not be considered as evidence.
We need not consider these procedural issues, however, because we conclude that the Operator’s petition should be granted on the ground that there is no substantial evidence supporting the ALJ’s finding that Fussell was an agent of the mine. The testimony of Miller and Mine Manager Jonathan Farrell demonstrates that Fussell had the same status and responsibilities as every other Lead Miner in the Operator’s employ at the time of the accident and that all working miners were classified as Lead Miners at that time. The fact that Fussell, like all Lead Miners, was responsible for the safety and men in his work area (of whom there was only *827 one) because the Lead Miner in the area who is most senior in employment date is in charge of the Lead Miner with less seniority, does not warrant a finding that he is an agent: “This overly-broad standard could potentially reclassify the vast majority of rank-and-file miners as agents—every time an experienced miner tells a less experienced miner “what to do’ on the job, the experienced miner would be acting as the operator’s agent.” Martin Marietta Aggregates, 22 FMSHRC 633, 640 (2000).
Furthermore, there is no evidence in the record that Fussell’s function “involved responsibilities normally delegated to management personnel,” or that he “exercised managerial responsibilities at the time of his negligent conduct.” Id. at 638. Nor is there any evidence that Fussell had “the authority to hire and fire employees,” to “assign equipment to employees,” or to discipline employees. Secretary of Labor v. REB Enterprises, Inc., 20 FMSHRC 203, 211 (1998). The fact that Fussell may have had “the authority to assign tasks” to the other Lead Miner with whom he was working on the day of the accident is not by itself sufficient to support a finding that he is an agent. See Martin Marietta, 22 FMSHRC at 638-40.
For these reasons, we conclude that the ALJ’s finding that Fussell was an agent whose negligence was imputable to the Operator was not supported by substantial evidence. We therefore grant the petition with respect to Citation Nos. 7995404 and 7995405, and vacate the penalties imposed in connection therewith. In view of our holding and the factors cited in the ALJ’s decision with respect to the assessment of penalties, the imposition of further penalties for the conduct described in Citation Nos. 7995404 and 7995405 would be arbitrary and capricious. Accordingly, no further penalties shall be imposed with respect to those two alleged violations.
PETITION GRANTED IN PART; PENALTIES VACATED IN PART.

 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

. At oral argument, the Operator withdrew its appeal as to the two citations unrelated to Fussell's death. Because we hold that Fussell's negligence was not properly attributable to the Operator and because that negligence was a critical element in the ALJ’s assessment of fines with respect to the death-related citations, we do not reach Claims 2 through 4.